# **A F F I D A V I T**

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, to-wit

I, Mari L. Woodford, being first duly sworn, do hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.    I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since October 2004.  I am currently assigned to the Louisville Field Division, Charleston, West Virginia Field Office.  As a Special Agent, I am authorized to investigate violations of federal laws of the United States and to execute warrants issued under the authority of the United States.

2.    I possess a Bachelor of Arts degree in Criminal Justice from the Richard Stockton College of New Jersey (2001). I graduated from a 13-week Criminal Investigator Training Program and a 14-week ATF Special Agent Basic Training Program (2005). I have received investigative training, conducted and participated in investigations of violations of federal criminal laws, including those relating to firearms and controlled substances.  These acts commonly involve the criminal use and transfer of firearms, illicit drug trafficking, acts of arson,

criminal possession, or use of explosives, and/or destructive devices. I have training and experience that has made me familiar with the appearance, packaging, paraphernalia and distribution of controlled substances such as, cocaine powder (HCl), cocaine base (crack), heroin, marijuana, LSD, opioid and other pharmaceuticals, methamphetamine and other commonly used street drugs. As a Federal Agent, I am authorized to investigate violations of law of the United States and execute warrants issued under the authority of the United States.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF DEVICES TO BE EXAMINED

4. The properties to be searched are one (1) Black Motorola Cellular Smartphone with attached PopSocket, IMEI# 355344820569237, containing SIM card 8901240314744908571F; one (1) Black AT&T Cellular Smartphone with Blue Back and attached PopSocket, no outside SIM card slot; and one (1) Black AT&T Cellular Smartphone with Blue Back, no outside SIM card in phone, U626 HX0-06 (hereafter the "Devices") which were found on March 23, 2023, during the arrest of Trellae NELLUM-TONEY.

2

5. The Devices are currently located at the ATF Charleston Field Office, 300 Summers Street, Suite 1400, Charleston, WV 25301 in the evidence vault.

6. The applied-for warrant would authorize the forensic examination of the devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 922(g)(1), Title 21 U.S.C. § 841, and Title 18 U.S.C. § 924(c), have been committed by Trellae NELLUM-TONEY. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

8. In January 2023, ATF Charleston Field Office opened a criminal investigation upon receiving information from the Kanawha County Sheriff's Department (KCSD) and the Putnam County Sheriff's Department (PCSD) related to alleged possession of firearms and narcotics by convicted felon, Trellae NELLUM-TONEY (hereinafter "NELLUM-TONEY").

9. On September 22, 2022, at approximately 0432 hours, a KCSD Deputy conducted a traffic stop on a grey Cadillac Deville,

3

driving west bound on West Main Street, Saint Albans, WV.   The vehicle immediately pulled over. As the Deputy placed his vehicle in park, the driver's side door opened and an individual later identified as Trellae NELLUM-TONEY exited the vehicle. NELLUM-TONEY turned and hunched down towards the left side of the vehicle and then crouch walked towards the front of the vehicle.   The Deputy provided multiple verbal commands for the individual to show him his hands.   NELLUM-TONEY stood up in front of the vehicle and put his hands in the air.

10.   The Deputy ordered NELLUM-TONEY to take a seat back inside of his vehicle.   While speaking with NELLUM-TONEY, the Deputy smelled an odor of marijuana emitting from the vehicle. The Deputy had NELLUM-TONEY exit the vehicle, patted him down for officers' safety, and had him stand in front of the cruiser. The Deputy asked NELLUM-TONEY about the marijuana smell. NELLUM-TONEY advised he had marijuana inside the vehicle but could not tell how much there was.   Due to these factors, deputies searched the vehicle.

11.   Deputies located a plastic container with two small plastic bags of a green leafy substance and a digital scale with what appeared to be residue from marijuana and a white powdery substance on it.

12.   During the search, after the suspected marijuana was located, NELLUM-TONEY repeatedly told deputies that no other

4

drugs were inside the vehicle. Deputies also noticed that every time they moved close to the front driver side of the vehicle NELLUM-TONEY showed signs of nervous behavior.

13. A Deputy located a small plastic bag on the ground approximately 3 yards from the driver's side seat of NELLUM-TONEY's vehicle. Inside the bag was two individual small bags with a white powdery substance suspected to be heroin. A digital scale was located approximately two yards from the suspected heroin. The Deputy continued to walk on the driver's side of the vehicle and located a Raven Arms, model P-25, .25 caliber pistol, bearing serial number 265155 approximately eight yards from the vehicle. The firearm was loaded with four rounds in the magazine and one in the chamber. NELLUM-TONEY initially denied ownership of the firearm.

14. NELLUM-TONEY was arrested and transported to KCSD Headquarters for processing. After processing, NELLUM-TONEY informed a Sergeant that he wanted to speak with the officers. NELLUM-TONEY was moved to an interview room. Two separate interviews were conducted with NELLUM-TONEY on this day. Both interviews were digitally recorded, Mirandized, and advice of rights forms were signed by NELLUM-TONEY.

15. During these interviews NELLUM-TONEY made the following statements:

5

a. He was by himself, and his registration lights were not illuminated when he was pulled over and he knew they were not functioning properly.

b. He recently bought the vehicle.

c. He had marijuana, drugs, and a pistol in the car.

d. He received a call from his cousin who told him the drugs and gun were in the car.

e. He found the gun located in the back seat under the floor mat. He picked it up and placed it in his pants pocket. Before the traffic stop, he took the gun out of his pants pocket and placed it on the passenger seat.

f. He admitted to discarding the gun and bag of drugs while exiting his vehicle during the traffic stop.

g. He admitted to being a felon for 1st degree Robbery and that he knew he was not supposed to be around guns.

16. On January 24, 2023, at approximately 0110 hours, a PCSD Deputy initiated a traffic stop at the Scott Depot Exit on Interstate 64 Eastbound after observing a 2007 Blue Mazda MZ6 traveling at approximately 50-mph in a 70-mph posted zone and swerving.

17. The Deputy made contact with the driver who identified himself as Trellae NELLUM-TONEY. While speaking to NELLUM-TONEY, the Deputy observed the odor of marijuana emitting from

6

the vehicle. The Deputy asked if there was anything illegal in the vehicle and NELLUM-TONEY advised, "Yes, a little bit of weed." The Deputy noticed NELLUM-TONEY's eyes were red and dilated along with other indications of impairment. The Deputy asked NELLUM-TONEY to step out of the vehicle. He was then asked if there was anything else in the vehicle to which NELLUM-TONEY replied, "a shotgun."

18. A search of the vehicle was conducted during which a Savage, model Stevens 320, 20-gauge shotgun, bearing serial number 152645N was located in the trunk. The back seat of the vehicle was folded down and the black gun case containing the shotgun was visible from inside the vehicle. A Taurus, model 709 Slim, .9mm pistol, bearing serial number TJR73213 was located under the driver's seat. Approximately 2 grams of suspected marijuana was located in the center console area.

19. While conducting this roadside investigation, the Deputy asked NELLUM-TONEY if he wanted to make a statement. NELLUM-TONEY's statement was audio recorded by the Deputy.

20. NELLUM-TONEY was Mirandized and an advice of rights form was signed. The Deputy stated that he was conducting an investigation and informed NELLUM-TONEY that he was not under arrest at that time.

21. NELLUM-TONEY made the following statements during the recording:

7

      a. He drove to a friend's house where he picked up the shotgun and handgun.

      b. Later that night, he drove the vehicle to meet up with the same friend so they could sell the two firearms.

      c. Prior to meeting up with that friend, the traffic stop was conducted on NELLUM-TONEY's vehicle.

      d. NELLUM-TONEY stated that he owns the vehicle within which Deputies located the two firearms during the traffic stop.

22. PCSD ran the firearms in NCIC and determined the Taurus, model 709, .9mm pistol, bearing serial number TJR73213 was reported stolen on September 26, 2021, from a residence in Saint Albans, WV.

23. At the time NELLUM-TONEY possessed the aforesaid firearms, he had knowledge of his prior conviction for a crime punishable by a term of imprisonment exceeding one year as defined in 18 U.S.C. § 921 (a)(20), that is: convicted on or about August 26, 2014, in the Kanawha County Circuit Court, case #14-F-299, in violation of West Virginia Code 61-2-12, 1st degree Robbery. NELLUM-TONEY admitted on September 22, 2022 in a Mirandized statement that he was aware of his 1st degree robbery conviction and that he was not supposed to be around firearms.

24. On March 21, 2023, the Federal Grand Jury in the United States District Court, Southern District of West Virginia

returned an indictment on Trellae NELLUM-TONEY for two counts of Title 18 U.S.C. § 922(g)(1)- Felon in Possession of a Firearm.

25. On March 21, 2023, a Federal Arrest Warrant for Trellae NELLUM-TONEY was issued pursuant to return of the indictment.

26. On March 23, 2023, members of the ATF Charleston, WV Field Office along with members of KCSD executed the arrest warrant on NELLUM-TONEY at 228 Oliver Street, Saint Albans, West Virginia 25177.

27. During execution of the arrest warrant at 228 Oliver Street, Saint Albans, WV, an individual standing by a vehicle outside of the residence identified himself as Trellae NELLUM-TONEY. NELLUM-TONEY was taken into custody without incident.

28. ATF Resident Agent in Charge (RAC) David Bullard conducted a search incident to arrest of NELLUM-TONEY's person and recovered the following items out of his left pants pocket:

    a. Clear plastic bag containing approximately 9.4 grams of suspected marijuana (weight includes the packaging).

    b. Clear plastic bag containing approximately 3.37 grams of suspected marijuana (weight includes the packaging).

    c. Clear plastic bag containing approximately 3.69 grams of suspected heroin (weight includes the packaging).

    d. Motorola cellular phone with a blue back and PopSocket on it.

29.  A backpack and jacket were located on top of a vehicle in close proximity to where NELLUM-TONEY was arrested.  NELLUM-TONEY advised RAC Bullard that he could search the jacket and backpack, and further stated there was nothing in it.  ATF Task Force Officer Wyatt McCabe conducted a search of the backpack and recovered the following items:

    a. Outer packaging labeled "Backwoods" containing approximately 19.25 grams of suspected marijuana (weight includes the packaging) located in the jacket pocket.

    b. Digital electronic scale located in the backpack.

    c. AT&T Cellular Phone with blue back and PopSocket attached located in the backpack.

    d. AT&T Cellular Phone with blue back located in the backpack.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30.  Based upon my training, experience, and conversations with other law enforcement officers I know it is common practice for drug/firearm traffickers to use and keep cell phones in order to facilitate their drug/firearm trafficking business.  Cell phones allow traffickers to remain in close and nearly

instantaneous communication with their customers and suppliers. In my experience, it is common that electronic memories of cell phones used by drug/firearm distributors and users contain evidence of drug/firearm trafficking. This evidence includes call logs, text messages, stored emails, contact lists, photographs and video images of drugs/guns, drug proceeds, and drug trafficking paraphernalia and activity.

31. It is also common for drug/firearm users to utilize cell phones to obtain narcotics or firearms.

32. I also know that people who sell or possess firearms illegally frequently take or cause to be taken photographs or other images of themselves in possession of firearms, their associates, their property, and assets with cell phones. They also frequently utilize cell phones to communicate with other individuals to purchase or sell firearms.

33. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

34. There is probable cause to believe that evidence that was once stored on the Devices may still be stored there, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can

11

be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is because when a person "deletes" a file on a cellular phone, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space for long periods of time before they are overwritten. This is space on the storage medium that is not currently being used by an active file. Additionally, a cellular phone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

35. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes

described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

    b. Forensic evidence on a device can also indicate who has used or controlled the device.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, it is sometimes necessary to establish that a particular item is not present on a storage medium.

36. Based on the foregoing, the warrant applied for here would permit authorities to employ techniques, including but not limited to phone-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

37. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

38. Based upon the information set forth herein, probable cause exists that Trellae NELLUM-TONEY has committed violations of:

    a. Title 18, U.S.C. § 922(g)(1) - Prohibited felon in possession of a firearm.

    b. Title 21, U.S.C. § 841(a)(1) - Possession with intent to distribute heroin.

    c. Title 18, U.S.C. § 924(c) - Possession of firearms in furtherance of drug trafficking.

39.  Further, probable cause exists that evidence of these offenses is currently located in the Devices described herein and in Attachment A.

Respectfully submitted,

Mari L. Woodford
Special Agent
ATF

Subscribed and attested to by the applicant pursuant to Fed. R. Crim. P. 4.1 on April 14, 2023.

Dwane L. Tinsley
United States Magistrate Judge

15

## ATTACHMENT A

### Description of Property to be Searched:

The below referenced Devices were seized from 228 Oliver Street, Saint Albans, West Virginia 25177 (Device-1 seized from Trellae Nellum-Toney's person in front of the residence, Device-2 and Device-3 seized from a backpack in close proximity to Trellae Nellum-Toney during his arrest) on March 23, 2023, by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and are currently in the custody of the ATF.

Device-1: Black Motorola Cellular Smartphone with attached pop socket, IMEI# 355344820569237, containing SIM card 8901240314744908571F






Device-2: Black AT&T Cellular Smartphone with Blue Back and
          attached pop socket, no visible outside SIM card slot

 

Device-3: Black AT&T Cellular Smartphone with Blue Back, no SIM
          card in phone



This warrant authorizes the forensic examination of the Devices

for the purpose of identifying the electronically stored

information described in Attachment B.

3

## **ATTACHMENT B**

## **Information to be seized by the government**

1.    All information/records, to include text messages, emails, phone contacts, address books, calendars, GPS data, financial transactions, digital photographs and videos which constitutes fruits, evidence, and instrumentalities of violations of Title 18, U.S.C. § 922(g)(1), Title 21, U.S.C. § 841 and Title 18, U.S.C. § 924(c) including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs/firearms trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. all bank records, cash app records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review any information removed from the Devices in order to locate the things particularly described in this Warrant.

2